218

NEUNZ, GUARDIAN, APPELLEE, *v.* SUMMIT COUNTY CHILDREN
SERVICES BOARD, APPELLANT.

(No. 77-864—Decided May 10, 1978.)

*Mr. Michael A. Malyuk,* for appellee.
*Mr. Stephan M. Gabalac,* prosecuting attorney, and *Ms. Mary Ann Kovach,* for appellant.

CELEBREZZE, J. The issue presented by this appeal is whether appellant can recover, from the estate of appel-

lee's incompetent daughter, the cost of the support appellant provided for the child prior to the creation of her guardianship estate.[1]

R. C. Chapter 5153 serves as the statutory authority for the establishment and operation of county children services boards. In particular, R. C. 5153.16 delimits the powers and duties of county children services boards and provides, in pertinent part, as follows:

"The county children services board, subject to the rules and standards of the department of public welfare, on behalf of children in the county deemed by the board or department to be in need of public care or protective services, shall:

"(A) * * *

"(B) Enter into agreements with the parent, guardian, or other person having legal custody of any child, or with the department of public welfare, department of mental health and mental retardation, other department, or any certified organization within or outside the county, or any agency or institution outside the state, having legal custody of any child, with respect to the custody, care, or placement of any such child, or with respect to any matter, in the interest of such child, provided the permanent custody of a child shall not be transferred by a parent to the board or department without the consent of the juvenile court;

"(C) * * *

"(D) Provide care of all kinds which the board deems for the best interests of any child the board finds in need

[1]Our review does not extend to the question of the liability of the child's estate for services rendered to her subsequent to February 26, 1974, the date on which the Probate Court approved the settlement of the personal injury action and thereby funded the estate. We note that appellee, in his brief, refers to R. C. 5153.16(B) and infers that, as guardian of his daughter's estate, he would be willing to enter into a "just and reasonable payment arrangement with * * * [appellant]" now that the guardianship funds are available. However, the record does not disclose whether appellant has attempted to negotiate a new agreement with appellee to cover prospective expenditures.

of public care or service; provided that such care shall be provided by the board by its own means or through other available resources, in such child's own home, in the home of a relative, or in a certified foster home, receiving home, school, hospital, convalescent home, or other institution, public or private, within or outside the county or state.''

Appellant contends that the phrase ''other available resources'' in subsection (D) above, leads to the ''inescapable conclusion'' that the recipient of county children services is primarily liable therefor. We disagree.

Subsection (B) of R. C. 5153.16 empowers the county children services board to enter into an agreement with the parent, guardian, or other person or entity having legal custody of the needy child, ''with respect to the custody, care or placement of'' such child. Pursuant to R. C. 5153.19,[2] this agreement shall include a determination as to the ability of the child, parent or guardian to pay for the cost of such care, and this determination shall be made *before* the county children services board obligates itself with respect to the care of the child. Upon consideration of R. C. 5153.16(D), it thus appears that while appellant shall ''[p]rovide care of all kinds which * * * [it] deems for the best interests of * * * [appellee's daughter],'' this care shall be provided by the appellant board, through its own means, unless other resources (*e. g.,* funds obtained through acceptance of a determination as to ability to pay, under R. C. 5153.19) are currently available.

In the instant cause appellant made a determination as to appellee's ability, as an indivdual, to contribute towards the care and support of his daughter, and appellant has

---

[2]R. C. 5153.19 provides, in pertinent part, as follows:

"The county children services board or county department of welfare shall, before entering into any agreement obligating the board or department with respect to the care of any child, determine the ability of the child, parent, guardian, or other person to pay for the cost of such care, having due regard for other dependents. Such determination shall, if accepted by the parent, guardian, or other person, be made a part of such agreement * * *."

not alleged that appellee failed to comply with the terms of the agreement which he entered into at the time of his daughter's commitment. Because R. C. 5153.16 and 5153.- ered prospectively, appellant's first argument must be rejected.

19 contemplate agreements to pay for services to be rend-

Appellant contends further that liability of the guardianship estate for past services can be based upon certain provisions of R. C. 5153.20, which read, in pertinent part, as follows:

"The cost of care furnished by the county children services board, by the board of county commissioners, or by the county department of welfare, to any child having a legal residence in another county, shall be charged to the county of legal residence. * * *

"Any moneys received by the county children services board or department furnishing such care from persons liable for the cost of any part of such care, by agreement or otherwise, shall be credited to the county of legal residence."

We are not persuaded that the statutory language cited above is supportive of appellant's position. Rather, it appears that the primary purpose of this section is to specify which of two counties bears the cost of care where a child resides in one county but receives benefits in another county. Certainly the reference to "[a]ny moneys received * * * from persons liable * * * by agreement or otherwise * * *," for the cost of care furnished to a child, cannot by itself be construed as evidence of a legislative intention to sanction the imposition, upon a guardianship estate, of retrospective liability for county children services. Although the statute is rather vague, it may be so phrased in order to allow for the situation where a father or mother who is "otherwise" liable for the care of their child, e. g. pursuant to R. C. 3113.06,[a] but who has not ac-

---

[a] R. C. 3113.06 reads, in pertinent part, as follows:

"No father, or mother when she is charged with the maintenance, of a legitimate or illegitimate child under eighteen years of age, or a

cepted a determination as to ability to pay for the care of the child, pursuant to R. C. 5153.19, nevertheless makes payment to another county's children services board.

As its second proposition of law appellant argues that if this court should find that the cited statutes[4] do not establish a right to reimbursement from the guardianship estate such liabilty may be imposed under "the common law principle of implied contract for necessaries furnished."

In rejecting this contention the Court of Appeals below relied upon a determination made in the case of *Division of Aid for the Aged* v. *Hogan* (1944), 143 Ohio St. 186. The *Hogan* decision involved an attempt on the part of an agency to recover, from the estate of the wife, pension relief which her deceased husband had received in his declining years. In the course of affirming the judgment in favor of the wife's estate this court disregarded any possible common-law theories allowing recoupment of the pension payments, commenting as follows, at pages 188-189:

"In reaching a decision in this case it is to be borne in

mentally or physically handicapped child under age twenty-one, who is legally a ward of a county children services board or a county department of welfare * * *, shall neglect or refuse to pay such board or department the reasonable cost of maintaining such child when such father or mother is able to do so by reason of property, labor, or earnings.

"An offense under this section shall be held committed in the county in which the board or department is located. The board or department shall file charges against any parent who violates this section * * *."

[4]In the courts below appellant maintained that R. C. 5121.04(B) serves as statutory authority for the recovery of the disputed sum. Although this section is cited in appellant's briefs to this court, appellant does not persist in its claim that this statute is dispositive of the issue in the cause at bar. Indeed, a perusal of R. C. 5121.04 reveals that it sets forth the duties of the state Department of Mental Health and Mental Retardation to investigate the financial condition of, and thereafter impose charges upon patients of benevolent institutions under its control. It is thus readily apparent that this section does not invest a county children services board with authority to recover from any person or entity the cost of maintaining a child at a private institution, which the parties concede the Hattie Larlham Foundation to be.

mind that there is no constitutional or common-law duty on the part of the state or any governmental unit to support poor and destitute persons. The whole matter of relief for the needy is purely statutory. * * * [Citation omitted.] Hence, the statutes are the only authority which may be looked to in seeking recovery from a relative of an aged person on account of governmental aid extended such person, or in seeking recoupment from the estate of the recipient of such aid, after his death. If there is no statute authorizing it, there can be no recovery. * * * [Citations omitted.]''

The above view is in accord with the general rule on the subject. The following excerpt is taken from 79 American Jurisprudence 2d 156, Section 93:

''As a general rule, there was no obligation at common-law to reimburse public authorities for support furnished to a pauper. And in the absence of special statute, no liability rests upon an aged indigent to reimburse the state and county for aid legitimately obtained and granted; nor is his estate liable therefor. This is the common-law rule applicable to old-age benefits paid by a municipality to an aged indigent to whom the payments were not made by accident, mistake, or fraud. This rule has been applied to preclude reimbursement from an indigent's after-acquired estate in the hands of a conservator or guardian.''

Moreover, the following passages are found in Douthwaite, Attorney's Guide to Restitution, in a chapter entitled Restitution in a Governmental Context:

''* * * [W]hen a public body sues, the action is almost invariably brought under the authority of some controlling statute and it must, of course, present a situation falling within the statutory authorization. For example, where a public body furnishes relief to the aged or indigent or otherwise needy persons, any right to restitution either from the actual recipient or from others legally responsible for the performance of this duty necessarily derives from statute—the common law recognizes no such right.''

"Any rights of the public agency to reimbursement of funds so disbursed from persons who can be regarded as responsible for the recipient's welfare ordinarily derive from the terms of an authorizing statute. Such recoupment statutes are implicit legislative recognition of the relative's primary duty of supporting their elderly kin; * * *.

"Though statutes of this nature sometimes enable a public agency to obtain reimbursement from the recipient himself if he or she becomes financially able to make restitution, or from the estate of a decedent recipient where there are assets available therein, in the absence of enabling authority of this nature there can ordinarily be no such recovery. However, when such benefits can be shown to have been obtained by fraud, or perhaps as a result of mere mistake, such legislative authority would hardly be required." Douthwaite, at pages 400, 404-405.

This general view has been applied in several jurisdictions to prevent a state, or political subdivision thereof, from recovering, from the estate or property of an insane or incompetent person, the cost of care provided for such person. Thus the following appears at 41 American Jurisprudence 2d 594-596, Sections 56, 57:

"In the absence of statutory provisions on the subject, the courts are not agreed on the right of the state to recover out of the estate or property of an insane person or from his relatives for his support while confined to an asylum or other state institution. The view prevails in some jurisdictions that in the absence of specific statutory authority to the contrary, the state has no right of recovery in such instances, on the broad theory that the maintenance of such institutions is largely charitable in character, for the public welfare, and without any intendment of compensation for the care of those confined therein. "* * *

"In some jurisdictions, the estate of the incompetent is liable by statute for the cost of his treatment and maintenance in a public institution, and such statutes have been held to be constitutional, at least where some limita-

tion is placed on the amount that can be charged against the estate * * *.
    "* * *

"Under some statutes, the cost of care and maintenance furnished to an incompetent by a public institution or hospital can be collected by the state from property acquired by the incompetent after the care and maintenance is furnished to him. A statute providing for such liability has been held to be constitutional * * *."

On the basis of the aforementioned authorities it is the decision of this court that appellant's common-law theory of recovery must be rejected.[5]

Accordingly, the judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

[5] In two cases presenting fact situations somewhat analogous to the cause at bar reimbursement from after-acquired funds was denied. See *Washington* v. *Beitel* (1974), 77 Misc. 2d 1016, 355 N. Y. Supp. 2d 726, and *Application of Woods* (1961), 32 Misc. 2d 745, 222 N. Y. Supp. 2d 903. These decisions hold that government social service agencies could not require reimbursement of expenditures made on behalf of infants injured in accidents when those infants later recovered from the tortfeasors.